Next case is Intl Data Products v. United States 065083. We are ready when you are, Mr. Tolchin. I'm not going to try to touch on any issue that can be addressed in our briefs because time doesn't permit it. I think our briefs are really clear and do address the issues very forthrightly. I want to focus, however, on just two in this overall argument. One is the issue of contract interpretation. The second is an issue of the application of logic to what appears to be a somewhat unique but not completely unique situation. Let me address the contract interpretation. Why don't you address the Verilis case and tell us why that isn't controlling? Why? I'm not familiar with exactly the part of Verilis you're referring to. Well, it seemed to me to cover this issue when you have a termination and you have a maximum and a minimum, and the price of the contract was not the maximum as you've argued here, but is at least the minimum and whatever has been ordered. There has been ordered and you've delivered much more than the maximum. What did I see, 350 times? So Verilis holds that you are not entitled to the maximum quantity. This is an IDIC contract. That's my recollection of Verilis. Right. Well, Verilis comes in a long line of cases, but they're not termination for convenience cases. And that, I think, is the issue that presents itself to this Court on the issue of contract interpretation because there are two clauses here. One is the termination for convenience clause, which is D-252.211.7000, and the second is clause B-2. So in the Verilis, the Travel Center case, and in all that whole series of cases, there is no termination for convenience clause. But in terms of post-termination obligations, why isn't Verilis just as binding, even though it may have been a T for D? Because there's another clause in the contract that has to be read in conjunction with the minimum and maximum clause. And indeed, in this particular case, we not only have the termination for convenience clause, which has to be read with the minimum and maximum clause, but we have a minimum and maximum clause which has unique language in it, which is that users need language, which makes it into what really is a requirements contract. Hadn't the government already paid for these warranty services? No, sir. They haven't already paid for it, and that was clear from the beginning. Well, they purchased under the contract with a warranty included in their purchase, right? So wouldn't the warranty under the contract have been a part of the purchase price? And part of the agreement is what they bought? It's part of what they bought, but it's not included. So they bought it, they paid for it. Why wouldn't that continue after they paid for it? Because it's not included in each particular computer that they bought. So that when I buy a computer, if the total cost of the warranty is in that same computer, the cost of that computer would be hundreds and hundreds and hundreds of dollars more than the actual cost of the computer because of the way these computers are priced. And this was undisputed below. The way these computers are priced is that that cost is spread among all the computers that are expected to be sold under this contract. I don't understand. If government had the discretion to not exercise a second option, so it could have not exercised its option hypothetically, and the contract would have only lasted a year. Are you suggesting that if the contract had only lasted a year, IDP could revoke its warranties on the products for that first year? If for some reason the contract option was not exercised, we would have made a bad business judgment. We would have lost. But you still concede that under that scenario, there was a warranty for the goods purchased the first year, and that warranty holds. Under that scenario, that's true. But not under the scenario we have here, where we have a termination for convenience clause, which specifically states that we get paid not only for the work completed, for which we haven't been paid, but also any work which we are in the course of preparing to do, so that any work that is in the pipeline, so to speak, is work that we are entitled to recover. Where does that clause cut off warranties? That clause doesn't cut off warranties. Where is the clause that cuts off your warranties? Well, let's look at it this way. When the contract ends, under what obligation are we to continue to do warranty work? Let's say we didn't do it. Could the government come to us, say, and breach a contract? The contract is ended. What could we possibly do? What warranty work do we have to do? Well, what about my first scenario, though? If the government failed to exercise its discretion for the second option year, you conceded that you would have an obligation under the warranties. How would you answer your own question, then? Because in that particular instance, the warranty part of the contract would have been continued. In this particular case, there was a termination of the contract. The contract disappeared. And because the contract disappeared, the warranty disappeared. But because of your action, you were the one that sold your company to a non-Section 8 company. If we would hypothetically take your position in this, wouldn't we give an incentive for somebody to front load their contract, sell their company to a non-Section 8, and then avoid all those massive warranty expenses that you say can amount to hundreds of dollars in each computer? I assume that there are bad faith questions that can't be raised and can't be litigated. But isn't that—wouldn't that be the law? The law would say you could do that in that instance, then, if we would follow your line of reasoning, right? If the law would be applied with an absolute malattachment, just— No, no, the law is the law. We apply it without looking at implications. Not necessarily. And so everybody in your situation would front load those contracts and avoid all the warranty costs. The law often looks at implications. The law often looks at good faith and bad faith. But you're conceding that would be the implication. I'm conceding that would be the implication. On the other hand, look at it— How can that be true, though? Doesn't that suggest that we're reading far—you're reading far too much into this clause that doesn't say that warranties are terminated with the termination of— I don't think I'm reading too far into this clause. Look, we have a contract here. Most contracts, in fact, when I draft contracts all the time, I put survivability clauses in the contract. And I say these particular clauses survive termination of the contract. I do that, and that's a normal, standard drafting process. I do that because I know when a contract ends, the contract comes to an end except for anything that is specifically set to survive. And indeed, in the FAR, as we pointed out to you, the Termination for Convenience Settlement Regulation specifically provides for the survivability of warranties only by agreement. Because that's an understanding that unless you have an agreement that it survives, when the contract terminates, that's the end of the warranty work. So the answer to your inquiries is that you have a contract, and that contract has a certain life to it. And that contract's life either is one year or two years or could be longer as well. It could be longer. And indeed, if the contract comes to a normal end at the end of a course, as you say, if the option is an exercise, the warranty provision is still continued because the contract is yet alive, because there's still a warranty that's yet alive. Once a contract terminates, once a contract ends, it's obliterated. There is no provision under which I can operate. Under your theory, if the government doesn't exercise a second option, there's no end to the contract? The contract goes on for as long as the warranty is good? But in termination, that's different? It would depend on how the option clause is written. I believe that in theory, if the government doesn't exercise an option, it's possible that the warranty also disappears. I believe that most warranty clauses are written in such a way that they would not disappear simply because an option is not exercised. However, that's different than a termination. When a contract is terminated, there is no more contract. It's taken off the table. But you're saying when the government fails to exercise its option for a second year, then the contract is not terminated? Not necessarily, no. What does not necessarily mean? It depends on the language under which they're operating. Well, let's say the language doesn't say the contract is going to continue for purposes of warranty. If it doesn't say it's going – well, it depends on – it's the option language. I think the option specifically – the option language in the contract where there's an option to exercise says that the option to exercise is not exercised. And in that particular instance, the right to order ends. I think that's how that's interpreted. Is that the case in this case or not, the option clause? The option – I don't know how the option clause is written in this particular case. It's not really an issue because the issue here is that they terminated the contract. And that is what is key, the termination. And again, think of it from a logical perspective. Let's assume we didn't do the warranty work, and the government comes to us and says you're in breach. In breach of what? There is no contract. It's been terminated. Let's assume that there was a dispute as to whether – In breach of your obligation to provide the warranty. Well, let's assume that there's a dispute as to whether a particular fix was under the warranty or not. The government comes to us and says do it, and we say don't do it. How do we dispute this? The contract is terminated. There is no more contract. You're saying the warranty was under the contract. I'm sorry? You're saying the warranty was under the contract, which has been terminated. Correct. And once the contract is terminated, the warranty is terminated. And that's how you get to that. That's how you end that issue because there is no more warranty. But there's a second issue in this case, and the second issue is equally important. And that issue is the issue of whether we get our termination inventory payment because that goes directly to the bearer list and that whole line of cases. The question there is are we limited to that minimum amount. And our position is, of course, we're not limited to that minimum amount. We cited the cases to the court which are distinguished on the grounds that these are semi-requirements cases, the Albano case, for example. But if you look at the language in those cases, it's not decided on whether it's a requirements case or a plain IDIQ. It's decided on the basis that you can't apply a minimum in an IDIQ contract because these are all IDIQ contracts. You can't apply a minimum clause to cut off the right to termination for convenience payments because under the termination for convenience clause, as I was saying, you have a right to preparation. And in this particular case, put yourself in the circumstances of IDIQ. The IDIQ was told that it had a $100 million estimated contract. It proposed in its proposal, which was part of the contract,  It maintained this inventory. It had hundreds of thousands of dollars' worth of items in inventory on the date of termination. The government comes and says, We're not paying you for that termination inventory because we've already paid you $100,000 on day one. That's all our obligation is. Well, my client's obligation was to have this massive inventory because that was part of the contract. The termination for convenience clause says we get paid for everything that is in process. Mr. Tolchin, you do have time left, but you asked to save seven minutes, and you're down to less than three. Whatever your choice is is fine with us. I see that, Your Honor. I'll just end by referring the court to the Albano court, which specifically said that the argument that was being made by the government should be rejected. An attempt at termination under the indefinite quantities clause, which is exactly what we are dealing with here, after ordering the minimum services there specified, which is exactly what the government is arguing here, without any further responsibility to complain, to conflict with the obligations imposed by the termination of convenience provisions. That's our point. That's what the law is in this circuit, and we ask that it be adhered to in this case. I'll reserve the rest of your time. We'll save the rest of your time. Ms. Kidmiller. May it please the Court. There are three critical facts to the resolution of this appeal, first being that the government did prepay all that it was ever going to pay for the warranty services. Second, that the plain meaning of the contract contemplated that the warranty obligation would continue beyond the completion or end of the contract. Contemplated. Where was that expressed in the contract? First, Your Honor, the contract did not tie the continuation of the warranty in any way to completion or termination. On the contrary, the contract said that the warranty services, depending upon the product, would last for two to five years. That's not tied in any way to the end of the contract, so that if the government simply— But of course, that's under the contract, isn't it? Yes, Your Honor. And the contract is terminated. However, the termination of the contract did not avoid or cause to disappear the completed task orders that had already been accepted, delivered, and paid for. What's your response to the— The other side says, well, see, that doesn't make any sense, because what if they refuse to comply with the warranty? What if there's a dispute? How does the government then— I mean, their point, as you heard, is how does the government then enforce this warranty when the contract is terminated? Your Honor, there's no contradiction there. The government would sue for a breach of warranty. Some authorities consider that to be a species of a type of breach of contract claim, and here that breach relates to those completed task orders for which the government had paid in full, and under those task orders, the warranty's been attached to the goods. Here, the termination affected future performance by the parties. In other words, activities that would have remained executory on both sides. If the government wanted to place new orders, then IDP fulfilling those new orders. These warranty services were not completely— they wouldn't be completely new contractual obligations. Isn't that the answer, then, that you have to sue them for breach of warranty when they fail to provide the warranty services? Yes, Your Honor. You have to sue them, not use this vehicle. You have to bring an independent suit and sue them for breach of warranty. Isn't that correct? I believe so, Your Honor, yes. As opposed to, for example, an equitable adjustment to the contract that had already been completed, we would bring an independent action against them. Your brief repeatedly cites to Joint Appendix 88, and I couldn't find that page in the appendix. Your Honor, it was not included in the appendix. It was left out. There are two places that you can see that warranty language in the materials before you. The first, it's quoted at page 16 of the government's initial brief, the warranty provision. It's also repeated in the trial court's opinion. So it's the same warranty provision cited in the court of claims opinion. Yes, Your Honor. I can find that. There are like three big appendices, but the main page you rely on in the appendix wasn't there. So that was a little confusing. Yes, Your Honor. I inadvertently omitted it. But that language is in the language cited in the court of claims opinion. Yes, Your Honor. It's a paragraph set off by the courts. It says the warranty shall, and has the word shall bold and underlined. It's that language there. The desktop five contract, plain language of the contract, shows that the warranties were tied to the products that were sold and paid for. When IDP priced the unit prices for the computers, it gave no separate pricing for the warranty services. The pricing of the contract appears beginning at page 61 of the appendix. And I refer the court to page 133 of the appendix, which is an excerpt from IDP's own proposal, which clearly shows units listed with one unit price and the descriptions underneath those units, three-year warranty, showing that that warranty was tied part and parcel of the goods that were bought, sold, and with respect to those task orders completed as of the time of payment. Now, the termination notice said immediately stop all work, terminate subcontracts. This termination will not affect the rights and liabilities of the parties arising out of the contract or otherwise concerning defects, guarantees, or warranties. That was the termination notice. Was that binding? It's not contractual. It wasn't agreed to by the other side. What is its significance? I mean, if I'm on the other side from you and I say something, that doesn't necessarily make it so, except if they had the right to terminate. That obviously was so. But to state that warranties continue, where's the support for that? Your Honor, the reservation in the termination notice provides clarity to the parties. We do not contend that the reservation is the key element to whether the warranty survived or not. But that's the issue before us. Yes, whether the warranty survived. And contract principles will answer that question. A reservation, the government did reserve here, but reservation is not necessary in order for the warranty to survive completion of the contract. IDP has suggested that a reservation is necessary simply because parties routinely reserve warranties. But the routine reservation does not necessarily mean that in the absence of a reservation, a warranty never survives the completion of a contract. I don't think you've mentioned Verilis yet. The authorship of that case would seem to give it special importance. But isn't that significant here? Isn't that controlling? Yes, Your Honor. Verilis does control on the question whether IDP is entitled to anything above the minimum contract price here by way of termination cost. In Verilis, it doesn't matter whether there's a termination for convenience. Let me start that over again. IDP has suggested that Verilis does not apply because this is a termination for convenience. However, Verilis discusses and focuses upon whether the contract at issue is an IDIQ contract. And if that is true, as is the case here, it doesn't matter how the contract ends. The termination for convenience doesn't affect the type of contract. This clearly is an IDIQ contract. The plain language of the contract identified it as such. The proposal from IDP identified it as such. The request for proposals. The trial court found it was an IDIQ. The plaintiff's complaint lists it as an IDIQ. Is there a difference between warranties and upgrades in this case? Is this case just about warranties or upgrades assumed in that? Because some of the cases we have talk about upgrades. Is there a difference? There may be. In this case, warranty upgrade services has been used as a phrase throughout, including at the trial court. Certainly, repairing a defect is somewhat different than providing a new version of software. Right, that's why I'm asking the question. They are different. Now, in this case, the joint appendix demonstrates, this is beginning at pages near the end, page 1372 and on, you see a series of emails. The government was seeking the warranty services for things that were broken after contract termination. Mouses that wouldn't work, hard drives that failed to work. So really what we have at issue here in this six or eight month period, depending upon which part you ask, are those warranty repair services. Yeah, but you're asking us to rule on the fact that the other side is obligated under the warranties. Are you saying, so what's your answer to my question? Is that just warranties for fixing or does that include upgrade? It's our position that it would include both. However, if the court would disagree, we would certainly maintain that at a minimum it has to include the warranties for repairing of defective products. But how do we do that? I mean, you're asking for a legal principle that as you responded to Judge Rader, we're supposed to construe the warranty and say you're enforcing the warranty. How are we supposed to parse and say we're enforcing only a part of the warranty that deals with fix-its and not that part of the warranty that deals with upgrades? No, Your Honor. I'm checking the warranty again. I didn't recall that the upgrade was specifically in the warranty provision. There are some other sections of the contract related to, for example, technical support. The warranty provision itself appears to relate to the repairing of the defects. And those are the services that the government maintains under any circumstance carried on here. So what is the government's position, that we only enforce the warranty insofar as it deals with fixing defects? That the warranty is for repair of defects, that the upgrade services are something slightly different. And while we maintain that they did survive, they are slightly different. So this Court could enforce the warranty provision, as it appears in the contract, meaning repairing of products. And that can be done without having to split apart the warranty provision as it appears in any way. Going back to the issue of whether this is a requirements contract, there's absolutely no interpretation necessary of this contract. It lacks the essential elements of a requirements contract. The government was not obligated to purchase all up to a certain amount of requirements from IDP. Indeed, there were other awardees under this very contract. So IDP knew that the government would not be coming to it to meet its requirements under this contract. That's an essential element of a requirements contract. It was expressly an IDEC. Pardon me? It was expressly an IDEC. Yes, Your Honor. I-D-E-Q. Yes, Your Honor. Finally, if this Court should... I'm looking, by the way, at the warranty clause that's in the red brief on page 16, and it does include a 2-year upgrade warranty on software. So upgrade warranties seem to be included in the warranty along with defect warranties. How would we make that distinction? It's in page 16, and I'm just looking at that warranty clause. Contractors shall provide a 3-year on-site 24-hour fix to replace hardware warranty and a 2-year upgrade warranty on software. Yes, Your Honor, I see that. Well, we maintain that that should be enforced. Okay. The upgrade here was intended so that the part of the bargain was that the government didn't want to buy products that would be obsolete 30 minutes after they came off the assembly line. Now, that could be construed as a defect. Certainly, it was part and parcel of the party's bargain. We're not aware of any rule that would prevent this Court from separating out the upgrade services, and this Court could still enforce the warranty for defects. Well, it's very difficult, I think. I mean, as you recognize in your brief, this is kind of a new issue, and you're asking this Court. So on a theory of warranties and requirements of warranties, so you're saying, well, we could say certain warranties are enforceable and others are not enforceable? Is that what you're suggesting we do? No, Your Honor. I'm saying that those warranties that are warranties, in other words, if an upgrade is going to be defined as an upgrade... But the upgrade's in the warranty here, so that kind of dispels that argument, doesn't it? No, Your Honor. As Judge Rader pointed out, you call it an upgrade warranty. I mean, that's at least what the party seemed to think was included within the term of a warranty. It could also be called upgrade services. I know that the language is somewhat irrelevant, but the... Well, no, the language isn't irrelevant. That's your problem, because the language is upgrade warranties, not upgrade services. Well, as the trial court and the parties have referred to, we've said warranty and upgrade services. And with respect to that, the warranty can still mean the defects. The defect repair can continue on. But on what basis, on what theory would we say defects okay, upgrades not okay? On what basis would we say that? One basis upon which the court could say that is to look at upgrade services as requiring some sort of continuing performance by IDP. Rather than just correcting a defect, it's more forward-looking, and it's providing an entirely... An upgraded product is, in some respects, a new different product than the one originally provided. I think you're making the other side's argument. In an effort to demonstrate that, at a minimum, the warranty, any repair defects here, should continue on. And finally, that if the court should disagree, IDP is entitled to no further payment for that work because the government has paid in full for that work. Thank you, Ms. Kidmiller. You had asked to save a little time for your cross-appeal, but you've gone over. And the issue of the cross-appeal and the main appeal are so close that I think you've had your time. So we'll hear just a little bit of rebuttal from Mr. Tolchin. Thank you, Your Honor. I guess what's presented to the court is, what is the difference between determination for convenience and simply stopping orders? In Verilis, as the judge already knows, that was a case in which Verilis was complaining because they simply stopped placing orders. And Verilis was upset because they stopped placing orders. But there was not a termination for convenience. That is critical. When there's a termination for convenience, then the court has to go back and look at the Team Proceed Clause because that is a contractual clause. And that clause specifically says that when you terminate, it comes to an end and you get paid for all the work in process. And, you know, which is our inventory claim. And you don't have to do any additional work. That is what a termination means. And that's the difference between Verilis, where they just stopped ordering, and a termination, which ends the contract. Then the court has to decide whether you need a reservation to make an agreed reservation in order to allow certain parts of the contract to continue. And our position is you do. FAR says specifically that you do because that's how the termination for convenience agreements are written, the settlement agreements are written. FAR explicitly says that. Common sense and practice of all lawyers says that's what you do because we all put survivability clauses in contracts. This doesn't have that survivability clause. So what you come up with is exactly the issue that you were delving into with government counsel. You have a contract clause here that says we have to provide upgrades. Well, how do you do that when there is no contract? Counsel says that they could sue us for breach of contract if we didn't provide warranty. No, for breach of warranty. Breach of warranty. But there's no such thing as a breach of warranty unless you have a warranty contract. But the contract is terminated, so what do you do? That's the problem with this particular case. Once it's terminated, there is no contract, it comes to an end, and there is no further right to sue anybody under it because there is nothing to sue under. But you agreed to provide them looking at this upgrade warranty for two years. And they terminated the contract. No, no, no, you agreed to provide that as a warranty. A warranty, why doesn't that run separate from the contract? They paid for it, they bought it, they are entitled to have, if Microsoft comes up with some fancy new upgrade, they're entitled to have it. They bought it. And you agreed to provide it to them. It can't run separate from the contract because it is part of the contract. You can't take a piece of it and say, this is separate and this one stays and this one... It's part of one document, part of one agreement. That's the first answer. The second answer is that you cannot say... So if an expensive upgrade comes out, once again, you have a real incentive to sell your company, to run on Section 8, and avoid all those obligations. Well, maybe the government has to change the bar there. But this is what we're working with. As somebody said, I go to war with what I got, not with what I wish I had. The government goes to war with the clauses it has, not with what it wishes it had. And this is all we got. And if the government thinks that there could be an unfairness out there, they change the law all the time, that can change the law. But that's not what we're doing here. Thank you. Thank you, Mr. Colshan. Case submitted.